Ms. Teresa L. Hughes, Chair White County Election Commission P.O. Box 91 Searcy, Arkansas 72145
Dear Ms. Hughes:
This is in response to your request for an opinion regarding how write-in ballots should be counted where electronic voting systems, as authorized by A.C.A. § 7-5-601 et seq. (Repl. 1993), are utilized. In your correspondence, you note that White County will have a write-in candidate for the office of county treasurer in the general election in November. You state that the treasurer's race will be between a Democratic candidate and his former opponent in the Democratic primary, who is now running as a write-in candidate.[1] You also state that issues regarding the primary election have been the subject of litigation in the White County Circuit Court.[2] Your request pertains, specifically, to how the write-in ballots should be tabulated in White County, which uses punch cards with the electronic voting systems and the "central location" method of tabulation, as authorized by A.C.A. § 7-5-614(b). With respect to § 7-5-614(b), you note, however, that the provision does not address the central tabulation of write-in ballots and that write-in ballots appear to be covered, instead, under A.C.A. §§7-5-613(4)-(6), which you state require the judges and clerks of the election to count the write-in ballots. You state that if A.C.A. §§ 7-5-613(4)-(6) refers to the judges and clerks at each voting box, "this will lead to mass confusion and probable error in the count." As a result, you state that the White County Election Commission would like to use the following methods for handling the write-in vote and tabulating the write-in ballots:
 1. Each voter will be provided with a punch card ballot along with a paper ballot printed on an envelope sized to fit the punch card ballot without its stub.
 2. Each voter will be told to place their punch card ballot in the envelope, seal the envelope and deposit the ballot-envelope in the ballot box whether or not the voter casts a write-in ballot.
 3. After the judges and clerks close the doors, they shall count the number of vote cards-envelopes as required by A.C.A. § 7-5-613(2) and enter the total number of voters on the tally sheets as required by A.C.A. § 7-5-613(3).
 4. The judges and clerks would then sort the ballot-envelopes into two groups: (1) write-in ballots and (2) non write-in ballots.
 5. The judges and clerks would then mark the punch card ballot and the envelope serially as required by A.C.A. § 7-5-613(5), without opening the sealed envelope. (We have had an envelope designed that would allow for marking the ballot without opening same.)
 6. The judges and clerks would then record a separate tally of the number of write-in ballots, bundle the write-in ballots separately from the remainder of the ballots and deliver all of the ballots to the White County Courthouse to be counted.
 7. At the Courthouse, the commission would have nine (9) judges and clerks especially hired to handle the opening of all the envelopes, checking write-in "ballots" against the votes cast on the punch card ballots and keeping a manual tally of the write-in votes.
 8. After the write-in ballots have been checked and manually tallied, each set of judges and clerks would then oversee the punching of the ballot card to record the write-in vote on the ballot card in a space reserved in the computer for the write-in candidate. The computer would then run all the punch cards for a box and give a complete tally of all votes cast. The manual count would be a cross-check against the computer.
With respect to this matter and the foregoing methods which the White County Election Commission would like to use for write-in ballots in the general election in November, you have asked for an opinion on the following questions:
 1. Does A.C.A. § 7-5-614 override A.C.A. § 7-5-613, so that the phrase "judges and clerks of election," as appears in §§ 7-5-613(4)-(6), can be interpreted to include judges and clerks at the courthouse?
 2. Are you aware of any prohibition under the election laws of this state that would prohibit the election commission from conducting the handling and tabulation of the ballots as outlined above? Specifically, the commission is concerned about the manual marking of the punch card to allow the computer to tabulate the write-in votes.
 3. If there is a prohibition as to any of the above proposed steps, please indicate which steps are contrary to law.
With respect to your questions, there are two sections located among the statutes on electronic voting systems which refer specifically to procedures for write-in votes. One of those sections appears at A.C.A. § 7-5-610 (Repl. 1993), which provides:
 Where necessary, a separate write-in ballot, which may be in the form of a paper ballot, card, or envelope in which the elector places his vote card after voting, shall be provided in all elections to permit electors to write in the names of persons who have qualified as write-in candidates and whose names are not on the ballot or candidate and issue labels.
The other section appears at A.C.A. § 7-5-613 (Repl. 1993), which is entitled "Counting vote cards and write-in votes." It provides:
 In precincts where an electronic voting system is used, as soon as the polls are closed:
 (1) The judges and clerks of election shall secure the marking devices against further voting;
 (2) They shall thereafter open the vote card box and count the number of vote cards or envelopes containing vote cards that have been cast to determine that the number of vote cards does not exceed the number of voters shown on the list of voters who received vote cards at the polling place. If there is an excess, this fact shall be reported in writing to the county committee of the political party or the county board of election commissioners, as the case may be, with the reasons therefor if known;
 (3) The total number of voters shall be entered on the tally sheets;
 (4) The judges and clerks of election shall count the write-in votes and prepare a return of the votes on forms provided for that purpose;
 (5) If vote cards[3] are used, all cards on which write-in votes have been recorded shall be numbered serially, starting with the number one (1), and the same number shall be placed on the vote card of the voter;
 (6) The judges and clerks of election shall compare the write-in votes with the votes cast on the vote cards. If the total number of votes for an office exceeds the number allowed by law, then a notation to that effect shall be entered on the back of the vote cards, and if the votes are to be tabulated at a central location they shall be returned to the counting location in an envelope marked "defective vote cards." Such invalid votes shall not be counted. So far as applicable, provisions of laws relating to defective paper ballots shall apply to defective vote cards under this subchapter.
Sections 7-5-610 and 7-5-613 of the Arkansas Code, as set forth above, are those provisions which, in my opinion, govern the way in which write-in votes should be handled where electronic voting systems are used. Section 7-5-610 makes clear that, where necessary, a separate write-in ballot is to be provided; that separate write-in ballot "may be in the form of a paper ballot, card, or envelope in which the elector places his vote card after voting." A.C.A. § 7-5-610. Thus, the proposal by the White County Election Commission to use a "write-in ballot envelope," whereby the voter will, as I understand it, cast his write-in vote on the outside of the envelope and place his vote card (which the voter has punched to indicate his vote for offices other than write-in candidates) inside the envelope would appear to be consistent with A.C.A. § 7-5-610, since that statute authorizes as an appropriate separate write-in ballot an "envelope in which the elector places his vote card after voting."
As for counting the vote cards and write-in votes, the requisite step-by-step procedures are set forth in A.C.A. § 7-5-613. According to subparagraph (2) of that statute, after the polls close, the "judges and clerks of election" (which clearly refers to the election officials at each polling place) are to open the box into which the voters have placed their vote cards or "envelopes containing vote cards" and count these cards or envelopes to determine that the number does not exceed the number of voters shown on the list of voters to have received the vote cards. This count is to be recorded on the tally sheets. A.C.A. §7-5-613(3). Next, the "judges and clerks of election" (which again clearly refers to the election officials at each polling place) are to count the write-in votes and "prepare a return of the votes on forms provided for that purpose." A.C.A. §7-5-613(4). Thus, under the "write-in ballot envelope" procedure proposed by the White County Election Commission, the election clerks and judges at each polling place would count the number of write-in votes cast on the outside of the envelopes and prepare a return indicating the votes, which would be written on a form provided (presumably by the White County Election Commission) for that purpose. Then, since White County uses vote cards (i.e. card upon which voter casts his vote process of punching), the procedures set forth in subparagraphs (5) and (6) of A.C.A. §7-5-613 must be followed. Subparagraph (5) provides that "[i]f vote cards are used, all cards on which write-in votes have been recorded shall be numbered serially, starting with the number one (1), and the same number shall be placed on the vote card of the voter." It would appear this would require the election judges and clerks at each polling place in White County to place the same number (starting serially with the number one) on the "write-in ballot envelope" and on the corresponding vote card, which has been placed inside the envelope by the voter. Next, subparagraph (6) of § 7-5-613 requires the election judges and clerks at each polling place to compare the write-in votes with the vote cards. This is done to ensure that the total number of votes cast for an office does not exceed the number allowed by law. Since the election judges and clerks are required under subparagraph (6) to make a notation on the back of vote cards where it is indicated that a voter has cast more than the allowed number of votes for an office (in this case county treasurer), it appears that it will be necessary for the election officials at each polling place in White County to open the "write-in ballot envelope" and remove the vote card since that is the only way in which the officials will be able to make the comparison that is required by subparagraph (6). Subparagraph (6) further provides that, if the "central location" method of tabulation is being used and if the comparison is done and indicates that the total number of votes cast for an office exceeds that allowed by law (fact of which must be noted on back of vote card), the officials must place the vote cards in an envelope marked "defective vote cards," and the envelope shall be returned to the counting location; such votes are not to be counted. Since White County uses the "central location" method of tabulation, as authorized by A.C.A. § 7-5-614(b), the foregoing steps with respect to "defective vote cards" must be followed.
The foregoing procedures, as set forth in A.C.A. § 7-5-613, are, in my opinion, those which must be followed for write-in votes where electronic voting systems are used. In describing those steps above, I have tried to state how the "write-in ballot envelope" proposed by the White County Election Commission would fit into the framework of those steps. With regard to the specific eight steps set forth in your correspondence, it is my opinion that steps one (1) through three (3) would be consistent with the requirements contained in A.C.A. §§ 7-5-610 and7-5-613(2) and (3). It is my opinion, however, that steps four (4) through (8), as set forth in your correspondence, would not be consistent with the requirements set forth in A.C.A. §§7-5-613(4)-(6). Rather, the steps outlined in the preceding paragraph above should be followed. That is, the election judges and clerks at each polling place (not the judges and clerks at the central counting location) must, after the polls are closed, first count the number of "write-in ballot envelopes" (i.e. envelope on which write-in vote appears and in which vote card is contained) that are in the vote card box. See A.C.A. §7-5-613(2) (also would require that if number of "write-in ballot envelopes" exceeds the number of voters shown on the list of voters who received vote cards, fact must be reported to election commission). Next, the total number of voters would be entered on the tally sheets. See A.C.A. § 7-5-613(3). Then, the judges and clerks at each polling place would count the write-in votes and prepare a return of the votes on forms provided for that purpose.See A.C.A. § 7-5-613(4). Since vote cards are used, it appears that judges and clerks at each polling place would then need to open the "write-in ballot envelopes," so that the envelopes and vote cards could be numbered (i.e. starting serially and placing the same number on vote card as has been placed on corresponding envelope). See A.C.A. § 7-5-613(5). Next, the judges and clerks at each polling place in White County would compare the write-in votes and the vote cards to assure that a voter has not cast more than the votes authorized by law for the office of county treasurer (the only position, I assume, for which there will be a write-in candidate). See A.C.A. § 7-5-613(6). If it appears that a voter has cast more than the number of votes allowed by law, the election officials at each polling place in White County must indicate that fact on the back of the vote card and place it in an envelope marked "defective vote cards," which shall be returned to the central counting location. These would appear to be all of the steps that are necessary under the statutes.
Finally, Arkansas Code Annotated § 7-5-614(b) (Repl. 1993) does not, as you point out in your correspondence, mention write-in votes. The section pertains to the central tabulation of votes where electronic voting systems are used and provides:
 If the votes are to be tabulated at a central location:
 (1) The judges and clerks of election shall place all vote cards that have been cast in the container provided for the purpose. This container shall be sealed and delivered forthwith by the judges of election. If both judges cannot accompany the delivery of the container, than at least one (1) judge and at least (1) clerk designated by the judges will accompany the container to the counting location or other designated place, together with the unused, void, and defective vote cards and returns.
 (2) All proceedings at the counting location shall be under the direction of two (2) judges named by the county committee of each political party with respect to primary elections and under the direction of two (2) judges named by the county board of election commissioners with respect to general and special elections. In general and special elections, no more than two (2) of the judges shall be of the same political party.
There is nothing in the foregoing section about write-in votes, and this fact, viewed in conjunction with the procedures set forth in A.C.A. § 7-5-613 which, in part, pertain specifically to write-in votes, compels the conclusion that the write-in votes will not be tabulated on the equipment at the central counting location; rather, it appears that the calculation of write-in votes performed by the election judges and clerks at each polling place, which is required under A.C.A. § 7-5-613(4), is the only tabulation that is necessary. This conclusion is further compelled by A.C.A. § 7-5-615(e) (Repl. 1993), relating to certification of the election returns, which provides:
 The return printed by the automatic tabulating equipment,[4] to which has been added the return of write-in and absentee votes, shall constitute the official return of each precinct. All returns shall be certified by the election officials in charge of the tabulation thereof in the same manner as is provided by law for the certification of election returns of votes cast by paper ballots. [Emphasis added.]
In my opinion, the foregoing provision contemplates that write-in votes will not be processed on the "automatic tabulating equipment," which in the case of White County, is located at the White County Courthouse (i.e. the "central counting location as authorized by A.C.A. § 7-5-614). The statute makes clear that a separate piece of paper, which contains the return of write-in votes, is to be attached to the return printed by the automatic tabulating equipment; the return of write-in votes is, presumably, that which was prepared by the election judges and clerks at each election polling place pursuant to A.C.A. §7-5-613(4), as discussed above. In sum, I find no authority in the statutes for steps four through eight, as proposed by the White County Election Commission, particularly step number eight.
As I have set forth in detail what are, in my opinion, the requisite procedures regarding write-in votes where electronic voting systems are utilized, it is unnecessary to respond to your specific questions. Hopefully the discussion above will offer some assistance.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Nancy A. Hall.
Sincerely,
WINSTON BRYANT Attorney General
WB:NAH/cyh
[1] I assume that the write-in candidate has complied with the provisions of A.C.A. § 7-5-205 (Repl. 1993), which states that "[n]o votes for write-in candidates in general elections shall be counted or tabulated unless the candidate or his agent shall notify in writing the county board of election commissioners and either the Secretary of State if a state or district candidate, or a county clerk if a candidate for a county township or municipal office, of his intention to be a write-in candidate not later than sixty (60) days before the opening of the polls."
[2] It is my understanding that this litigation is over and that, while some of the matters at issue in the case involved the way in which votes were cast in the primary, the questions you have posed concerning the way in which write-in votes should be counted were not involved in the suit.
[3] "Vote card" refers to "a card upon which the voter casts his votes by the process of punching." See A.C.A. §7-5-602(2).
[4] "Automatic tabulating equipment" is defined in A.C.A. §7-5-602(1) as an "apparatus necessary to automatically examine and count votes as designated on vote cards and data processing machines which can be used for counting votes and tabulating results, but shall not include those voting machines authorized under this subchapter." Pursuant to A.C.A. § 7-5-614(a)(1), the tabulation of votes of a precinct in which an electronic voting system is used may be by "automatic tabulating equipment" at a central counting location (the method utilized by White County) or at the polling place.